**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JERRY NORTON and PAPER, | ) | |
| ALLIED-INDUSTRIAL, CHEMICAL | ) | |
| and ENERGY WORKERS | ) | |
| INTERNATIONAL UNION, | ) | |
| (AFL-CIO) and its LOCAL 5-0959, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 02-CV-0763-CVE-FHM |
| | ) | |
| FLOWSERVE CORPORATION | ) | |
| PENSION PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court are plaintiffs' Motion to Confirm and Enter Judgment on Arbitration

Award (Dkt. ## 91, 92) and Defendant's Motion to Vacate Arbitration Award (Dkt. # 99).[1]

Plaintiffs ask the Court to confirm the arbitrator's decision awarding Jerry Norton ("Norton")

pension benefits.  However, defendant seeks to vacate the arbitrator's decision on the grounds that

the arbitrator showed manifest disregard for the law and his decision did not flow from the essence

of the underlying documents.

---

[1]     Defendant's motion to vacate (Dkt. # 99) was included in the same document as defendant's
response (Dkt. # 98) to plaintiffs' motion to confirm the arbitrator's award.  Defense counsel
is advised that multiple events should be filed as separate documents.   CM/ECF
Administrative Guide of Policies and Procedures, at IX(B) (revised Sept. 2007) ("Do not file
a document that contains multiple CM/ECF events that should be filed as separate
documents (e.g., Answer and Counterclaim, Motion and Response, Witness and Exhibit List,
etc.").

**I.**

Norton was employed by Flowserve Corporation ("Flowserve") and Flowserve offered its employees pension benefits through the Flowserve Corporation Pension Plan ("the Plan"). Norton belonged to the Paper, Allied-Industrial, Chemical and Energy Workers International Union ("Union"). The Union negotiated a collective bargaining agreement ("CBA") with Flowserve that required Flowserve to arbitrate disputes arising under the Plan. Section 8.2 of the Plan provides:

> 8.2    Dispute Resolution.   Notwithstanding any provision of Section 1.4 of Part A to the contrary, if during the term of this Plan any dispute should arise between the Employer and any Participant which concerns the interpretation of [sic] application of any of the provisions of this Plan, except those provisions for establishing the existence or continuance of Total and Permanent Disability and such dispute cannot be resolved through discussion between the Employer and the Participant and/or the Union, such dispute shall be referred to an impartial umpire to be selected by the Employer and by the Union. The impartial umpire shall have no authority in any way to alter, add or subtract from any provision of this Plan. The decision of the impartial umpire within such limitations shall be final and binding on the Employer, the Union and the Participant. The fees and expenses of such impartial umpire shall be shared equally by the Employer and the Union.

Dkt. # 6, Ex. A, at 45.  Under the terms of the CBA, the Union was a necessary party in arbitration of disputes arising out the Plan.

Norton voluntarily retired in December 2000 after working for Flowserve for over 25 years. At the time Norton retired, he was 60 years of age.  In May 2002, Norton attained the age of 62 and he sought pension benefits under an early retirement provision of the Plan.  Specifically, the Plan provides that "[a]ny participant who shall have attained the age of 62 years and who has twenty-five (25) years Total Length of Service . . . on or after March 1, 1991, shall be entitled to receive the full Pension benefit in accordance with Article V."  Id. at 38.  This provision is located in a section of the Plan concerning "Retirement Dates," and it defines an employee's eligibility for pension benefits

2

based on his retirement age and work experience.  Id.  The Plan grants the plan administrator "absolute discretion to determine all questions relating to the eligibility, Pension and other Plan rights of employees, Participants and other persons . . . ."  Id. at 12.  The Plan administrator denied Norton's claim for an unreduced "62+25" pension benefit, because Norton had not reached the age of 62 at the time he retired.  The Plan administrator cited, in support of the denial, language from the Summary Plan Description ("SPD") clarifying that an employee must "have attained age 62 and have 25 years Total Length of Service at the time of termination."  Dkt. # 26, Ex. D, at 90.  Norton is eligible for a deferred pension commencing at age 65, but the Plan administrator found that he was ineligible for a 62+25 benefits.

Norton retained an attorney and appealed the Plan administrator's decision denying his claim for 62+25 benefits.  In the event that the Plan denied his appeal, he demanded that the Plan refer the matter to arbitration for resolution.  Dkt. # 17, Ex. A, at 15.  He argued that the terms of the Plan were clear and the SPD could not be considered to the extent it conflicted with the plain language of the Plan.  See id. ("The attempt in the SPD to change [the Plan] is merely ineffective under the law.").  On October 8, 2002, the Plan denied Norton's appeal.  However, Norton had already filed a claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. ("ERISA"), in this Court on October 2, 2002, because the Plan took longer than 60 days to rule on his appeal.  In addition, Norton sought an order from the Court compelling the parties to arbitrate their dispute.  Dkt. # 6.  The Court initially denied Norton's motion to compel arbitration, because the CBA required the participation of the Union in arbitration and Norton had not joined the Union as a party.  Dkt. # 13.  Norton amended his complaint to add the Union as a plaintiff and, on January 30, 2004, the Court ordered the parties  to participate in arbitration to resolve Norton's claim for

pension benefits. Dkt. # 37, at 5. The parties engaged in a lengthy dispute concerning the procedures for selecting an arbitrator, and it took over two years to select an arbitrator. On June 19, 2006, the Court appointed Joseph F. Clark, Jr. to serve as arbitrator. Dkt. # 81, at 1. The Plan filed a motion to reconsider the Court's choice of an arbitrator, but the Court denied the Plan's motion. Dkt. # 89.

The arbitrator issued an opinion on September 27, 2007, reversing the Plan's decision to deny Norton's claim for 62+25 pension benefits. Dkt. # 91, Ex. A, at 17. The arbitrator rejected the Plan's argument that Norton's benefits claim was barred by the statute of limitations. He recognized that the standard of review for Norton's ERISA claim was an important issue, but he suggested that both parties placed too much importance on this issue. Id. at 7 ("As is typical of most ERISA cases, more time is spent on the scope of review than should be necessary at this particular juncture."). He initially rejected plaintiffs' claim that de novo review should be applied, but he disagreed with the Plan about the scope of arbitrary and capricious review:

> Norton argues that [Plan] language requires a *de novo* review. The Plan, on the other hand, states that I am not allowed to interpret the Plan at all because of the grant of discretion. I believe that both go too far in their argument. For reasons stated later, I believe that the arbitrary and capricious standard must apply. However, in order to discharge my duties under this appointment, I must preliminarily review and interpret the Plan. Neither adding to nor taking away from any of the Plan language. [sic] From that interpretation, I must determine whether or not the denial of benefits is arbitrary and capricious.

Id. at 3. The arbitrator placed a caveat on his application of arbitrary and capricious review. He interpreted Tenth Circuit precedent to require deference to the Plan's interpretation of the Plan only if the language of the Plan is ambiguous. Id. at 7 (citing Geddes v. United Staffing Alliance Employee Med. Plan, 469 F.3d 919 (10th Cir. 2006)). If he determined that the terms of the Plan

4

were unambiguous, he would interpret the Plan as a matter of law and the Plan's decision would be found arbitrary and capricious if it conflicted with his interpretation of unambiguous Plan language.

The arbitrator determined that section 3.2 of the Plan was unambiguous and, as a matter of law, Norton was entitled to receive 62+25 benefits.  He focused on language in the Plan permitting a "participant" (as opposed to an employee) who had worked for 25 years and attained the age of 62 to receive 62+25 benefits.  The arbitrator found that any "participant" was eligible for benefits, regardless of his employment status, if he fulfilled the age and experience requirements, and he rejected the Plan's argument that Norton had to be employed at age 62 to become eligible for 62+25 benefits.  Id. at 8-11.  He noted that the SPD supported the Plan's interpretation and he recognized that Tenth Circuit precedent treated the SPD as part of the Plan documents.  However, he found that the SPD was less favorable to the beneficiary, and he cited cases from the Fifth, Ninth and Tenth Circuits holding that the SPD should be considered only if it is more favorable to the beneficiary.  Id. at 12.  Since the SPD was less favorable to Norton, he refused to consider clear language from the SPD repudiating Norton's entitlement to benefits.  The arbitrator concluded that the Plan's decision to deny Norton's claim for 62+25 benefits was arbitrary and capricious based on the unambiguous language of the Plan, and he authorized the retroactive award of benefits.[2]

## II.

"[A] federal court may grant a motion to vacate an arbitration award only in the limited circumstances provided in [9 U.S.C. § 10] of the FAA, or in accordance with a few judicially created exceptions."  Lewis v. Circuit City Stores, Inc., 500 F.3d 1140, 1150 (10th Cir. 2007) (quoting

---

[2]    The arbitrator expressed no opinion as to the proper amount of benefits, and reserved that issue for the Court.

Bowen v. Amoco Pipeline Co., 254 F.3d 925, 932 (10th Cir. 2001)).  Section 10 permits a federal

court to vacate an arbitration award:

> (1) Where the award was procured by corruption, fraud, or undue means.
>
> (2) Where there was evidence of partiality or corruption in the arbitrators, or either of them.
>
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> (5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a).  The Tenth Circuit has recognized that a federal district court may refuse to enforce

an arbitration award that violates public policy, shows a manifest disregard of the law, or was the

result of fundamentally unfair proceedings.  Denver & Rio Grande Western R. Co. v. Union Pac.

R. Co., 119 F.3d 847, 849 (10th Cir. 1997).  However, the FAA "evinces a strong federal policy in

favor of arbitration" and the "standard of review of arbitral awards 'is among the narrowest known

to the law.'"  ARW Exploration v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995) (quoting Litvak

Packing Co. v. United Food & Commercial Workers, Local Union No. 7, 886 F.2d 275, 276 (10th

Cir. 1989)).

### III.

Defendant asks the Court to vacate the arbitrator's decision based on his manifest disregard

of Tenth Circuit precedent in applying the wrong standard of review and in failing to give

controlling weight to language in the SPD.  Defendant claims that the arbitrator ignored its

arguments based on the CBA and, if the arbitrator had considered the CBA, he would have determined that he lacked jurisdiction over the dispute. Finally, defendant argues that the arbitrator's decision did not draw from the essence of the underlying Plan documents, because his construction of the Plan ignored patent ambiguities in the Plan language.

ERISA Standard of Review

Defendant argues that the arbitrator applied the wrong standard of review to Norton's ERISA claim.[3] Although the arbitrator states that he used the arbitrary and capricious standard, defendant contends that the arbitrator actually reviewed the decision to deny Norton's benefits claim under a de novo standard.  Plaintiffs argue that the section 8.2 of the Plan required the arbitrator to review

---

[3]    "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). Specifically, 29 U.S.C. § 1132(a)(1)(b) grants Norton the right "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  The default standard of review is de novo.  However, when a plan gives the claims administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of a plan, a challenge under § 1132(a)(1)(B) is to be reviewed under an arbitrary and capricious standard.  See Firestone, 489 U.S. at 115 (courts must apply the appropriate standard "regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest.  Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.").

Under the two-tier "sliding scale" approach adopted by the Tenth Circuit, a "reduction in deference is appropriate" where there is an inherent or proven conflict of interest.  Fought v. Unum Life Ins. Co. of America, 379 F.3d 997, 1006 (10th Cir. 2004).   If the plaintiff shows a conflict of interest, deference to the decision is reduced and the burden shifts to plan administrator or fiduciary to prove "that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." Id.  In this case, no one raised a conflict of interest, so the "pure" arbitrary and capricious standard is applicable. Under this standard, a plan administrator's decision should be upheld unless it is "not grounded on any reasonable basis." Kimber v. Thiokol Corp., 196 F.3d 1092, 1098 (10th Cir. 1999).

the document as an "impartial umpire" and he lacked authority to show any deference to the defendant's decision.  Dkt. # 100, at 6.  Plaintiffs also argue that the arbitrator's decision should not be disturbed even if he applied the wrong standard of review, because he did not manifestly disregard the law.

This case presents a situation where the Plan administrator's decision was based on its construction of section 3.2 of the Plan, with no dispute as to the facts underlying Norton's benefits claim.  In ERISA cases, a reviewing court (or in this case, arbitrator) is required to show deference to a plan administrator's resolution of factual disputes and ambiguous language in a benefits plan. Nance v. Sun Life Assur. Co. of Canada, 294 F.3d 1263 (10th Cir. 2002).  In cases when the sole issue is the construction of plan language, the first step for a reviewing court (arbitrator) is to determine if the plan language is ambiguous.  Welch v. Unum Life Ins. Co. of America, 382 F.3d 1078, 1082 (10th Cir. 2004).  If a court (arbitrator) finds that the language of a benefits plan is unambiguous, it must interpret unambiguous provisions of a benefits plan as a matter of law and no deference is shown to a plan administrator's construction of unambiguous terms of a benefits plan. Miller v. Monumental Life Ins. Co., 502 F.3d 1245, 1250 (10th Cir. 2007); Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1189-90 (10th Cir. 2007); Admin Comm. of Wal-Mart Associates Health & Welfare Plan v. Willard, 393 F.3d 1119, 1123 (10th Cir. 2004). Of course, a plan administrator's application of unambiguous language to the facts is entitled to a significant amount of deference.  Unlike most ERISA cases, the present case does not involve the application of Plan language to disputed facts; rather, it rests on the interpretation of section 3.2

8

of the Plan as ambiguous or unambiguous.  Thus, in this case, the standard of review furor is nothing more than a tempest in a teapot.[4]

The arbitrator found that the language of the Plan conferred discretionary authority on the Plan administrator, but he determined that arbitrary and capricious standard applies to ambiguous Plan language, quoting Geddes v. United Staffing Alliance Employee Medical Plan, 469 F.3d 919 (10th Cir. 2006):

> Under the arbitrary and capricious standard, our inquiry is limited to determining whether the plan administrator's interpretation of ambiguous language was "reasonable and made in good faith."  We will not substitute our own judgment for that of the plan administrator unless the administrator's actions are without any reasonable basis.

Id. at 929.  The arbitrator also cited a Third Circuit decision for the proposition that an unambiguous plan document should be construed as a matter of law.  Kemmerer v. ICI Americas Inc., 70 F.3d 281 (3d Cir. 1995).  The arbitrator found that the Plan language was unambiguous.  Dkt. # 91, Ex. A, at 8-11.  Based on his conclusion that the language of the Plan was clear and unambiguous, he interpreted the Plan as a matter of law without giving any deference to the Plan administrator's decision.  Dkt. # 91, Ex. A, at 7.

The Court has reviewed the arbitrator's opinion, and finds that the arbitrator has not shown manifest disregard for the law.  Unambiguous plan documents should be construed as a matter of

---

[4]     Defendant's real criticism is not with the standard of review applied by the arbitrator, but rather with the arbitrator's determination that section 3.2 of the Plan  is unambiguous.  If the arbitrator had determined that section 3.2 was ambiguous, he would have been required to defer to the plan administrator's interpretation of the Plan.  However, he found that section 3.2 was unambiguous and no deference to the Plan administrator's interpretation of section 3.2 was required.

law by a reviewing court (arbitrator).  Miller, 502 F.3d at 1250; Flinders, 491 F.3d at 1189-90;

Admin Comm. of Wal-Mart Assoc., 393 F.3d at 1123.  Although the arbitrator's opinion may have

downplayed the deference generally required by the arbitrary and capricious standard, his decision

to construe unambiguous Plan provisions as a matter of law was correct.  The arbitrator cited Geddes

to support his conclusion that he was required to interpret unambiguous language in Plan documents,

even though the arbitrator attempted to apply the arbitrary and capricious standard of review to

Norton's ERISA claim.  Defendant has not shown that the arbitrator applied an incorrect standard

of review, and defendant certainly has not proven that the arbitrator "knew the law and explicitly

disregarded it."  Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C., 430 F.3d 1269, 1275

(10th Cir. 2005).  Thus, the Court will not vacate the arbitrator's decision based on his construction

of Plan documents as a matter of law.

Arbitrator's Refusal to Consider the SPD

        Defendant argues that Tenth Circuit precedent required the arbitrator to consider the SPD

when interpreting section 3.2 of the Plan.  Defendant claims that the arbitrator cited Chiles v.

Ceridian Corp., 95 F.3d 1505 (10th Cir. 1996), but he chose to apply conflicting law from the Fifth

and Ninth Circuits instead.  Defendant argues that the arbitrator's refusal to apply Chiles shows

manifest disregard for the law.  Plaintiffs respond that the arbitrator cited Chiles and distinguished

it from this case.  Even if the arbitrator misinterpreted Chiles, plaintiffs argue that the arbitrator was

aware of and attempted to apply applicable precedent, and his decision shows that he did not

manifestly disregard the law.

        In Chiles, a group of plaintiffs filed a putative class action seeking long-term disability

("LTD") benefits from their employer's, Ceridian Corportion's ("Ceridian"), LTD benefits plan.

Id. at 1509.  The plaintiffs relied on language in the SPD to support their claims that Ceridian agreed to pay an employee's premiums for the LTD plan while an employee was on disability or rehabilitation leave.  The master plan documents were silent on this issue, but the plaintiffs argued that the SPD created an enforceable promise.  Id.  The Tenth Circuit recognized that "SPDs are considered part of the ERISA plan documents."  Id. at 1511.  The plaintiffs demonstrated that a reasonable LTD plan participant could have believed that Ceridian agreed to pay premiums during the full period of disability or rehabilitation.  Id.  at 1517-19.  However, the Tenth Circuit held that a plaintiff must show "some significant reliance upon, or possible prejudice flowing from, the faulty plan description" contained in the SPD.  Id. at 1519 (quoting Aiken v. Policy Mgmt. Sys. Corp., 13 F.3d 138, 140 (4th Cir. 1993)).  The case was remanded to the district court to determine if the plaintiffs actually relied on the language of the SPD.

Although defendant cited broad language from Chiles treating the SPD as part of a benefits plan, the arbitrator concluded that Chiles applied only if a plaintiff was relying on an SPD that created a right to benefits not provided by the master Plan documents.  He determined that language of the Plan unambiguously required the Plan to pay Norton 62+25 benefits, and he refused to consider "conflicting" language in the SPD that would have supported defendant's denial of Norton's benefits claim.  Dkt. # 91, Ex. A, at 12-16.  The arbitrator implied that more beneficial language to the beneficiary should always be applied regardless of whether that language appears in the benefits plan or the SPD.  Id. at 13.  He relied on Washington v. Murphy Oil USA, Inc., 497 F.3d 453 (5th Cir. 2007), and Bergt v. Ret. Plan for Pilots Employed by Markair, Inc., 293 F.3d 1139 (9th Cir. 2002), to support his conclusion that conflicting language in the SPD should be considered only if it is more favorable to the beneficiary.  He also noted that the SPD contained a provision

11

deferring to the master Plan document to resolve any conflicts between the SPD and the terms of the Plan. Dkt. # 26, Ex. D, at 105 ("This [SPD] is not meant to interpret, extend, or change provisions of your Plan in any way. In the event of any discrepancy between this [SPD] and actual provisions of the Plan, the legal document that governs this Plan will be the final source and authority for determining Plan provisions."). He found that the Plan administrator's reliance on conflicting language in the SPD to deny Norton's benefits claim was arbitrary and capricious when the unambiguous terms of the Plan authorized the payment of 62+25 benefits to Norton.

Defendant argues that the arbitrator erroneously concluded that the Plan and the SPD were in conflict and, even if he determined that a conflict existed, he should have interpreted the alleged conflict with the intention of resolving any conflict. The Plan provided that "[a]ny participant who shall have attained the age of 62 years and who has twenty-five (25) years Total Length of Service . . . on or after March 1, 1991, shall be entitled to receive the full Pension benefit in accordance with Article V." Dkt. # 91, Ex. A., at 38. The arbitrator interpreted this provision to require the payment of 62+25 benefits to any "participant" reaching the age of 62 with 25 years of experience regardless of the employee's age at the date of retirement.[5] The SPD states that an employee must "have attained age 62 and have 25 years Total Length of Service at the time of termination," but the SPD deferred to the Plan in the event of a conflict between the two documents. Dkt. # 26, Ex. D, at 90, 105. The Tenth Circuit has clearly held that disclaimers requiring deference to the terms of the master plan document rather than the SPD are enforceable in cases when language in the master plan

---

[5]     The arbitrator relied on the definition of "participant" provided by ERISA. Under 29 U.S.C. § 1002(7), a participant is defined as an "employee or former employee . . . who is or may become eligible to receive a benefit from any type of employee benefit plan . . . ." Under this definition, Norton was clearly a participant and defendant has not challenged the arbitrator's reliance on § 1002(7) to define the term "participant."

document provides broader coverage than the SPD. <u>Charter Canyon Treatment Ctr. v. Pool Co.</u>, 153 F.3d 1132, 1137 (10th Cir. 1998).

In this case, the arbitrator determined that the Plan unambiguously created an entitlement to benefits and, based on this conclusion, he correctly applied Tenth Circuit precedent by refusing to consider the SPD as a basis to deny Norton's claim. Defendant has provided an interpretation of the Plan and the SPD that would read the two documents harmoniously. However, this Court is reviewing an arbitrator's decision and, unless defendant can show that the arbitrator manifestly disregarded the law, the Court may not reverse the arbitrator. <u>ARW Exploration</u>, 45 F.3d at 1463 ("An arbitrator's erroneous interpretations or applications of law are not reversible."). Although the arbitrator rejected defendant's argument, he did not show "willful unattentiveness to the governing law." <u>Jenkins v. Prudential-Bache Sec., Inc.</u>, 847 F.2d 631, 634 (10th Cir. 1988). Regardless of the correctness of his decision, the arbitrator's decision to ignore language in the SPD conflicting with his interpretation of an unambiguous provision of the Plan was not a manifest disregard of the law, and is not a basis to vacate his decision.

<u>Arbitrator's Alleged Failure to Consider the CBA</u>

Defendant argues that the arbitrator failed to consider the impact of the CBA on Norton's entitlement to 62+25 benefits. This Court has unequivocally ruled that "Norton was not a party to the collective bargaining agreement, and, as a retiree, he is not a member of the collective bargaining unit." Dkt. # 13, at 2-3. Defendant now claims that express language in the CBA limits 62+25 benefits to employees that retire after the age of 62, and the CBA should have been considered by the arbitrator when ruling on Norton's ERISA claim. It appears that defendant is relying on the Court's ruling that defendant was not an "employee" as a basis to argue that he was not eligible for

13

pension benefits under the terms of the CBA.[6] Defendant argues that the arbitrator failed to consider its argument that the Union waived any objection to language in the SPD clearly repudiating Norton's claim, because the Union did not institute grievance proceedings within five days of receipt of that revised version of the SPD on January 1, 1998.[7]

The record provided by defendant is not sufficient for the Court to consider defendant's arguments based on the CBA, because the Court can not even determine what arguments defendant presented to the arbitrator. Most importantly, defendant has not provided the Court with copies of its arbitration briefs. The Court will not rule on arguments in proceedings to vacate an arbitrator's decision if the Court can not clearly determine that the same arguments were presented to the arbitrator. Nat'l Wrecking Co. v. Int'l Bros. of Teamsters, Local 731, 991 F.2d 957, 960 (7th Cir. 1993) ("Failure to present an issue before an arbitrator waives the issue in an enforcement proceeding."). The arbitrator did address defendant's argument based on the statute of limitations, but defendant has not challenged the arbitrator's finding on this issue. Instead, defendant argues that the arbitrator improperly disregarded its other arguments based on the CBA. Without clear evidence from the arbitration proceedings identifying the arguments presented to the arbitrator, the Court would be exceeding its authority to consider such arguments when ruling on a motion to vacate the arbitrator's decision.

---

[6] The Court has attempted to summarize this argument, but admits that defendant's argument is difficult to understand. Defendant is not challenging the Court's conclusion that Norton was not an employee when he filed a claim for 62+25 benefits and, if the CBA is inapplicable to him, it is unclear why the arbitrator should have referred to the CBA.

[7] This argument is distinguishable from defendant's argument that the Union's receipt of a revised SPD on January 1, 1998 also started the statute of limitations on Norton's ERISA claim. While the arbitrator addressed and rejected the statute of limitations argument, he did not specifically address defendant's other arguments based on the CBA.

The Court will consider defendant's argument that the arbitrator improperly refused to consider the CBA as part of the Plan documents when reviewing Norton's ERISA claim because, based on the arbitrator's opinion, it is clear that this argument was presented to the arbitrator.  Dkt. # 91, Ex. A, at 3, 7.  The Court has reviewed the cited language from the CBA, and finds that it mirrors the language used by the Plan in most respects.  The CBA states that "an employee aged 62 with 25 years total service shall be entitled to receive the full pension benefit in accordance with the plan."  Dkt. # 26, Ex. B, at 71.  The key difference between CBA and the Plan is that the CBA applies to an "employee" rather than a "participant," and this is a potential conflict between the Plan and the CBA.  Section 1.4 of the Plan supports the arbitrator's decision to ignore allegedly conflicting language in the CBA.  The Plan gives the arbitrator "authority only to decide the question pursuant to the provisions of this Plan applicable to the question, but he shall not have authority in any way to alter, add to or subtract from any such provisions."  Dkt. # 6, Ex. A, at 14.  The arbitrator interpreted section 1.4 to limit his review to the terms of the Plan, and he did not clearly disregard the terms of the applicable documents when reaching this conclusion.  Dkt. # 91, Ex. A, at 7.  Based on the arbitrator's conclusion that the Plan unambiguously created a right to benefits, he would have exceeded his authority to consider conflicting evidence outside of the Plan.  Therefore, the arbitrator's refusal to consider the CBA in conjunction with the Plan does not provide a basis to vacate his decision.

Arbitrator's Decision Failed to Draw from the Essence of the Plan Documents

Defendant argues that the arbitrator's opinion "so misconstrues the Plan documents that it is not 'drawn from the essence of the contract.'"  Dkt. # 98, at 10.  Defendant disputes the arbitrator's conclusion that section 3.2 of the Plan unambiguously entitled Norton to receive 62+25

benefits even if he retired before age 62.  Defendant argues that section 3.2 did not clearly define a participant's eligibility for 62+25 benefits, and the arbitrator's refusal to consider other Plan documents shows that his decision did not draw from the essence of the documents.  Plaintiffs respond that the arbitrator based his decision on the plain language of the Plan, and his decision clearly draws from the contents of the underlying documents.

The Court's review of this argument is limited to a consideration of whether the arbitrator's decision fails to draw from the essence of the Plan, and the Court will not reinterpret the Plan or vacate the arbitrator's decision based on a disagreement with his construction of the Plan.  The Tenth Circuit has clearly stated that federal courts "lack the authority to review whether the arbitrator rightly or wrongly decided the matter and can only examine whether the arbitrator's decision 'draws its essence from the agreement."  Hermanns v. Albertson's, Inc., 203 Fed. Appx. 916 (10th Cir. 2006) (quoting Pub. Serv. Co. of Colorado v. Int'l Bhd. of Elec. Workers, Local Union No. III, 902 F.2d 19, 20 (10th Cir. 1990)); see also United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960) ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.").  The arbitrator's decision will be vacated only if:

> it is contrary to the express language of the contract or is so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator or if viewed in the light of its language, its context, and any other indicia of the parties' intention, it is without rational support.

LB&B Associates, Inc. v. Int'l Bhd. of Elec. Workers, Local No. 113, 461 F.3d 1195, 1197-98 (10th Cir. 2006) (quoting Local No. 7, United Food & Commercial Workers Int'l Union v. King Soopers, Inc., 222 F.3d 1223, 1227 (10th Cir. 2000)).

The arbitrator's construction of section 3.2 of the Plan is not "contrary to the express language of the contract" or "without rational support." Mistletoe Exp. Serv. v. Motor Expressmen's Union, 566 F.2d 692, 694 (10th Cir. 1977). The arbitrator provided a detailed discussion of Plan language to support his conclusion that section 3.2 of the Plan is unambiguous. At the heart of defendant's argument is a concern that the arbitrator relied too heavily on the Plan, to the exclusion of the SPD and the CBA, when reaching his decision, but this does not show that the arbitrator's decision fails to draw from the essence of the underlying documents. Instead, it shows that the arbitrator based his decision on an interpretation of the Plan. His opinion focuses on the meaning of the terms "participant" and "shall" as used in section 3.2 of the Plan, and he concludes that the Plan unambiguously required defendant to pay Norton's claim for 62+25 benefits. This does not show a disregard for the language of the contract; rather, it shows that the arbitrator considered the terms of the Plan and based his decision on the plain language of the Plan. If the Court were to vacate the arbitrator's decision based on a different interpretation of the Plan, it would simply be substituting its judgment for that of the arbitrator. Whether or not the arbitrator's decision was correct, it was supported by reference to the Plan and his interpretation of the Plan was not without rational support. Therefore, his decision drew from the essence of the underlying documents and should not be vacated on this ground.

17

**IV.**

The Court finds no basis to vacate the arbitrator's decision under the Federal Arbitration Act or Tenth Circuit precedent.  Defendant has vigorously argued that his decision was incorrect, but the Court's review of an arbitration award is very limited.  Right or wrong, the arbitrator did not manifestly disregard the law nor did his decision fail to draw its essence from the underlying documents.  Therefore,  his decision should be confirmed.  The Court will enter judgment in favor of plaintiffs and against defendant based on the arbitrator's decision.

**IT IS THEREFORE ORDERED** that plaintiffs' Motion to Confirm and Enter Judgment on Arbitration Award (Dkt. ## 91, 92) is **granted**.  Defendant's Motion to Vacate Arbitration Award (Dkt. # 99) is **denied**.

**IT IS FURTHER ORDERED** that counsel for plaintiffs shall submit a proposed judgment, approved as to form by defendant, to the CM/ECF Intake Box as a Word Perfect document no later than **February 15, 2008**.

**DATED** this 11th day of February, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT